UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

URIEL HALA,

                        Petitioner,

    v.

ESTHER BRACHA ANTEBY,

                        Respondent.

**MEMORANDUM AND ORDER**

24-cv-3633-LDH-LB

---

LaSHANN DeARCY HALL, United States District Judge:

Uriel Hala ("Petitioner") brings the instant action against Esther Bracha Anteby ("Respondent") pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, *et seq*, seeking the immediate return of a child, LRA, to Israel. Petitioner moves pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for a default judgment against Respondent.

## BACKGROUND

Petitioner and Respondent are the parents of LRA, who was born on February 21, 2021, in Mishmar Ha'Yarden, Israel. (Aff. of Pet. in Supp. of Order to Show Cause and Verified Pet. ("Verified Pet.") ¶¶ 5–6, ECF No. 4.) Petitioner is an Israeli citizen. (*Id.* ¶ 3.) Respondent is a dual American and Israeli citizen who resided in Israel from 2015 until July 2023. (*Id.* ¶¶ 3–4.) Petitioner and Respondent were never married but lived together from 2020 until separating in December 2022. (*Id.* ¶¶ 3–6; Ex. A to Verified Pet., Pet. to Israeli Central Authority ("ICA Pet.") at 16, ECF No. 4-1.)

LRA was born at the parties' home in Mishmar Ha'Yarden, with the assistance of a midwife, on February 21, 2021. (Verified Pet. ¶ 5.) Petitioner and Respondent did not begin the process of legally registering LRA with the Ministry of Interior until June 2022. (*Id.*) As part of

this process, Petitioner and Respondent submitted DNA samples, along with a DNA sample from LRA, to prove paternity. (*Id.*) On June 15, 2022, Petitioner and Respondent also executed a mutual affidavit with the Peace Court in Tzfat, Israel, attesting to the at-home birth of LRA. (ICA Pet. at 18.) In a court proceeding before a Family Court in Hadera, Israel, Respondent testified that Petitioner was LRA's father. (*Id.*; Verified Pet. ¶ 13.) Following this proceeding, Respondent was legally registered as LRA's mother by the Family Court, but Petitioner was not registered as LRA's father at the time. (ICA Pet. at 18.)

After Petitioner and Respondent separated in December 2022, they made an informal agreement to exercise joint custody over LRA and set a schedule whereby LRA would spend an equal number of days with each parent. (Verified Pet. ¶ 6.) Petitioner remained fully involved in LRA's life and care—including arranging and paying for her education, taking her to spend time with his extended family, and paying for her support while she was with Respondent. (*Id.* ¶ 8.) On July 27, 2023, Petitioner brought LRA to Respondent's apartment in accordance with the agreed upon schedule. (*Id.* ¶ 9.) On July 29, 2023, Respondent informed Petitioner that she was traveling on a short vacation to Ein-Hod, Israel and that he would not be able to pick up LRA from day care on July 30, 2023, as previously arranged, but that he could pick up LRA upon her return. (*Id.*) Respondent then stopped communicating with Petitioner. (*Id.*) On August 1, 2023, Respondent's mother, Batia Anteby, informed Petitioner that Respondent brought LRA to Brooklyn, New York and would not return to Israel. (*Id.* ¶ 11.) Since then, Petitioner has only been in contact with Respondent's mother, who resides at 1570 East 10th Street, Brooklyn, New York. (*Id.* ¶ 14.) Respondent's mother has sent Petitioner photos and videos of LRA, which appeared to be taken outside and inside of the home at that address. (*Id.*) However, Respondent's mother has not confirmed the residence of either LRA or Respondent. (*Id.*)

2

On August 4, 2023, Petitioner filed an application seeking the return of LRA with the Israeli Central Authority ("ICA"). (*Id.* ¶ 13.)  However, Petitioner's application was delayed because Petitioner was not registered as LRA's father with the Ministry of Interior.  (*Id.*)  On February 15, 2024, the Family Court in Hadera certified, based on the previously submitted DNA samples, that Petitioner is LRA's biological father.  (*Id.* ¶ 13; Ex. F to Verified Pet., Family Court Order dated Feb. 15, 2024, ECF No. 4-1.)  Months later, the ICA confirmed that Petitioner is LRA's father.  (Verified Pet. ¶ 13.)  Petitioner then commenced this action on May 20, 2024, filing a Complaint, Verified Petition, and Motion for a Temporary Restraining Order, among other documents.  (*See* ECF Nos. 1–4.)

On May 21, 2024, Judge Hector Gonzalez issued an Order directing the Respondent to appear on May 28, 2024, and show cause why the petition should not be granted and an order should not be issued directing the return of LRA to Israel.  (*See* ECF No. 7.)  Judge Gonzalez further ordered that (1) Respondent is prohibited from traveling with LRA outside of the counties within the Eastern District of New York, as well as New York County and Bronx County, (2) the United States Marshal Service ("USMS") was directed to serve a copy of the Order to Show Cause upon Respondent and, at the time of service, retrieve all passports and travel authorization documents for Respondent and LRA to be held in custody by the Clerk of the Court, and (3) that a copy of the Order and accompanying papers was to be served upon the Respondent at 1510 Ocean Parkway, or any other location where she may be found.  (*Id.*)

When Respondent failed to appear on May 28, 2024, Judge Gonzalez ordered that the Respondent respond to the petition on or before June 11, 2024, and directed the USMS, or Petitioner, to serve a copy of the Order on Respondent at 1510 Ocean Parkway or any other location where Respondent may be found.  (*See* ECF No. 8.)  Having been informed by the

3

USMS that the first Order to Show Cause had been served upon Respondent's father at 1510 Ocean Parkway,[1] but that no travel documents had been retrieved at the time, Judge Gonzalez again ordered that, within 24 hours of being served with the May 28, 2024 Order, Respondent was to turn in all passports and travel authorization documents for herself and LRA. (*Id.*)

On July 25, 2024, a summons was issued as to Respondent. (*See* ECF No. 12.) On October 1, 2024, Petitioner filed a Request for a Certificate of Default, (*see* ECF No. 16), attaching Affidavits of Service attesting to service of the Summons, Complaint, Petition, and relevant attachments upon Respondent by serving the documents on Respondent's mother at 1510 Ocean Parkway on July 31, 2024, emailing the documents to Respondent's email address on August 1, 2024, and sending the documents to 1510 Ocean Parkway by first class mail on August 2, 2024. (*Id.*) The Clerk of Court entered default on October 11, 2024. (*See* ECF No. 18.)

On November 26, 2024, Petitioner filed a motion for default judgment, requesting an order directing the retrieval and return of LRA to Israel with the assistance of law enforcement, enjoining the Respondent from further violations of the Hague Convention, and imposing sanctions upon the Respondent. (*See* Pet'r's Mot. Default J. ("Pet'r's Mot."), ECF No. 20.) By memorandum and order dated February 20, 2025, this Court denied Petitioner's motion for default judgment, with leave to renew, finding that Petitioner had not provided sufficient evidence to establish proper service nor adequate proof "that he had legally cognizable custody

---

[1] Petitioner lists Respondent's parents' address as 1510 Ocean Parkway in his Affirmation of Emergency accompanying his Motion for a Temporary Restraining Order. (*See* ECF No. 5.) However, Petitioner lists Respondent's parents' address as 1570 East 10th Street in his Verified Petition; Motion for Default Judgment, and renewed Motion for Default Judgment, dated May 29, 2025, and attests to serving the relevant documents at that address. (*See* ECF Nos. 4-1, 16, 20-3, 22-4, 24-3.)

4

rights over LRA under Israeli law at the time of her removal from Israel." (Mem. and Order, dated Feb. 20, 2025, at 5–12, ECF No. 23.)

On May 29, 2025, Petitioner filed a renewed motion for default judgment, requesting an order: (1) directing the retrieval and return of LRA to Israel with the assistance of law enforcement; (2) permitting substituted service upon Respondent; (3) directing the release of LRA's United States passport to Petitioner or, in the alternative, permitting Petitioner to apply for and receive travel documents for LRA, to assist with her return to Israel; (4) permitting substituted service of the petition and all pleadings; (5) enjoining the Respondent from further violations of the Hague Convention; and (6) imposing sanctions upon the Respondent. (Pet'r's Renewed Mot. Default J. ("Pet'r's Renewed Mot."), ECF No. 24.)

## DISCUSSION

### I. SERVICE UPON RESPONDENT

A petitioner seeking default judgment against a respondent who failed to answer or otherwise defend the case "must apply to the court" after "the clerk enter[s] the [respondent's] default." Fed. R. Civ. P. 55(a)–(b). However, "[e]ven where the Clerk of the Court has entered the default, '[the] court may appropriately review the adequacy of service before entering a default judgment.'" *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Son All Indus.*, No. 13-CV-4590, 2014 WL 4536911, at *3 (E.D.N.Y. Sept. 11, 2014) (collecting cases). In the instant matter, the Court still is not persuaded that service upon the Respondent was sufficient for the entry of default judgment.

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, and individual may be served by:

5

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service made; or
> (2) doing any of the following:
>    (A) delivering a copy of the summons and of the complaint to the individually personally;
>    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>    (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process.

Fed. R. Civ. Proc. 4(e). Specifically, under New York law, an individual may be served by, among other procedures, "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . ." N.Y.C.P.L.R. § 308(2). As courts have made plain, service requirements under N.Y.C.P.L.R. § 308 "must be followed strictly" and "[n]otice received by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court." *See Jianjun Chen v. WMK 89th St. LLC*, No. 16-CV-5735, 2020 WL 2571010, at *8 (S.D.N.Y. May 20, 2020) (internal citation and quotation omitted); *Macchia v. Russo*, 67 N.Y.2d 592, 595 (1986).

Here, Petitioner attests that Respondent was served with the Summons, Petition, Complaint, and relevant attachments by (1) leaving the papers with her mother, Batia Anteby, at her parents' residence at 1570 East 10th Street, Brooklyn, NY on July 31, 2024, (2) sending the documents by email to ebanteby@gmail.com on August 1, 2024, and (3) sending another copy of the documents by first class mail to her parents' residence on August 2, 2024. (*See* ECF No. 16; ECF No. 22-2, Ex. C to Verified Pet., Affidavits of Service.) Additionally, Petitioner attests that Respondent was served with his renewed motion for default judgment, memorandum of law in

support of his renewed motion for default judgment, and the proposed default judgment attached thereto by (1) "personal service at her last known address"—1570 East 10th Street, Brooklyn, NY 11230"—that is, her parent's address; (2) mailing the documents, via USPS, to her parent's address; and (3) sending the documents by email at to ebanteby@gmail.com. (*See* ECF No. 24-3.) However, as previously found by this Court, Respondent's last known address is in Israel. (Mem. and Order, dated Feb. 20, 2025, (citing Verified Pet. ¶¶ 7, 9, 14-15).) And, although an individual "can have more than one dwelling or place of abode," as contemplated by N.Y.C.P.L.R. § 308, *see Jianjun*, 2020 WL 2571010, at *8 (citing *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d. Cir. 1991)), to conclude that a place is a respondent's dwelling or usual place of abode, there must be "sufficient indicia of permanence," *see Jianjun Chen*, 2020 WL 2571010 at *8. For the reasons set forth in this Court's February 20, 2025 Memorandum and Order, the Court finds that Petitioner still fails to provide sufficient evidence to suggest that Respondent's parents' home is Respondent's usual place of abode. Accordingly, service was improper.[2]

Petitioner also moves for leave for substituted service upon Respondent, pursuant to Rule 4(e)(1). Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court

---

[2] Petitioner maintains that Respondent has received his papers, given that he emailed the petition to Respondent on August 1, 2024, and that Respondent replied on the same day, (*see* Pet'r's Renewed Mot. at 17; Ex. J to Pet'r's Renewed Mot. ECF No. 24-1; Ex. K to Pet'r's Renewed Mot., ECF No. 24-1), and service has therefore been effectuated via email, (*see* Pet'r's Renewed Mot. at 18-21.) However, "the simple fact that [Respondent] obtained a copy of the . . . [summons and] complaint against [her] is insufficient for service to be deemed effective under New York law." *Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010). Because "[Petitioner] failed to comply with the statutory conditions of CPLR 308, the fact that [Respondent] otherwise received notice of the proceeding is not enough to give this court personal jurisdiction over her." *Montessori at Flatiron LLC v. Coureau*, 127 N.Y.S.3d 698 (N.Y. Sup. Ct. 2020) (citing *Macchia v. Russo*, 67 N.Y.2d 592 (1986)).

7

is located or where service is made." Fed. R. Civ. Proc. 4(e)(1). In New York State, service may be effected "in such manner as the court, upon motion without notice directs, if service is impracticable under paragraphs one [personal service], two [leave and mail service][,] and four [nail and mail service]." *S.E.C. v. HGI, Inc.*, No. 99 CIV. 3866 (DLC), 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (citing N.Y. C.P.L.R. § 308(5)). Although N.Y. C.P.L.R. § 308(5) requires a demonstration of impracticability as to other means of service, it does not require proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute. *Id.* (first citing *Franklin v. Winard,* 592 N.Y.S.2d 726, 727 (1st Dep't 1993); then *Tremont Federal Savings and Loan Assoc. v. Ndanusa,* 535 N.Y.S.2d 8, 9 (2d Dep't 1988); and then *Saulo v. Noumi,* 501 N.Y.S.2d 95, 97 (2d Dep't 1986)). The meaning of "impracticability" depends upon the facts and circumstances of each case. *Id.* (first citing *Markoff v. South Nassau Community Hospital,* 458 N.Y.S.2d 672, 673 (2d Dep't 1983); and then *Hitchcock v. Pyramid Centers of Empire State Co.,* 542 N.Y.S.2d 813, 814 (3d Dep't 1989)). In the instant matter, Petitioner has shown that it would be impracticable to serve Respondent by the other methods of service set forth in N.Y. C.P.L.R. § 308(5).

As an initial matter, Petitioner argues that, despite his efforts to locate Respondent, by, e.g., hiring private investigators, her whereabouts remain unknown. (Pet'r's Renewed Mot. at 5-7; Verified Pet. ¶ 14.) Indeed, Petitioner contends that the only location that has been traceable to Respondent is her parent's address: 1570 East 10th Street, Brooklyn, NY 11230. (Pet'r's Renewed Mot. at 6.) That is, Petitioner asserts that he is unable to find Respondent's residence or usual abode, and there is no record that Respondent has designated an agent for service. (*Id.*) In light of these obstacles to the traditional methods of service, the Court is within its discretion to direct an alternative method of service. *See HGI, Inc.*, No. 99 CIV. 3866, 1999 WL 1021087

at *1 (finding that the court could "direct an alternative method of service" where the plaintiff could not locate a defendant, thus demonstrating impracticability as to the other methods of service set forth in Section 308.)

Moreover, Petitioner in the instant matter seeks to effect substituted service by email. (*See* Pet'r's Renewed Mot. at 18-21.) Any form of service must comport with due process by being "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *SEC v. Tome,* 833 F.2d 1086, 1093 (2d Cir.1987) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). Of relevance here, service by email, without more, comports with the requirements of due process "where a [petitioner] demonstrates that the email is likely to reach the [respondent]." *Vega v. Hastens Beds, Inc.*, 110 Fed. R. Serv. 3d 1372, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) (citation omitted). Petitioner has demonstrated as much in the instant matter. Indeed, Petitioner contends that Respondent acknowledged receipt of Petitioner's papers via email. (Pet'r's Renewed Mot. at 5-6, 20.) Specifically, Petitioner argues that, on separate occasions, Respondent, using the email address of ebanteby@gmail.com, emailed Petitioner's counsel regarding mediation and acknowledging receipt of Petitioner's papers. (Pet'r's Renewed Mot. at 5-6; Ex. I to Pet'r's Renewed Mot., ECF No. 24-1; Ex. J to Pet'r's Renewed Mot., ECF No. 24-1.) As such, service by email is appropriate, and Petitioner is granted leave to effect substituted service, via email, upon Respondent.

II.     **ICARA CLAIM**

"[B]efore a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law." *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F.App'x 54, 56 (2d Cir. 2013) (citing

*Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). A petitioner bringing an action pursuant to ICARA for the wrongful retention of a child "must show that (1) the child was 'habitually resident' in one contracting state and was retained in another contracting state; (2) the retention breached the petitioner's custody rights under the law of the contracting state of habitual residence; and (3) the petitioner was exercising those rights at the time of retention or would have been exercising those rights but for the retention." *Pozniak v. Shwartsman*, No. 20-CV-2956, 2021 WL 965238, at *7 (E.D.N.Y. Mar. 15, 2021) (citing *Gitter v. Gitter*, 396 F.3d 124, 129-30 (2d Cir. 2005)). Of relevance here, Article 3 of the Hague Convention provides that rights of custody may arise "by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *Gitter,* 396 F.3d at 130. Such rights include those relating to "the care of the person of the child and, in particular, the right to determine the child's place of residence." *Abbott v. Abbott*, 560 U.S. 1, 1 (2010). A parent's *ne exeat* right—that is, the right to consent before the other parent may take the child to another country—is alone sufficient to establish a custody right. *Abbott,* 560 U.S. at 10.

In the Court's February 20, 2025 Memorandum and Order, the Court concluded that it was not evident that, as alleged,[3] Petitioner possessed the legally cognizable parental rights enumerated under Israeli Civil Code Art. 1, 2 at the time of LRA's removal. (Mem. and Order, dated Feb. 20, 2025, at 10-12.) Specifically, the Court found that Petitioner failed to direct the

---

[3] According to Petitioner, he was not legally registered as LRA's father with the Israeli Ministry of Interior until February 15, 2024—almost three years after LRA was born and seven months after she was removed from Israel. (Verified Pet. ¶ 13.) Further, Petitioner alleges that, shortly after LRA's removal, he filed an application with the Israeli Central Authority and was informed that he could not seek assistance until an Israeli court "formally confirm[ed]" that he is LRA's father. (*Id.* ¶ 13.) Petitioner even suggests that Respondent took advantage of the fact that he was not legally registered as LRA's parent, to leave Isreal with LRA, without his consent. (*Id.* ¶ 12.)

10

Court to any legal authority, on which it could rely, as support for his allegations. (*See id.*) This deficiency is now remedied.

Here, Petitioner alleges that he had, and was exercising, custody rights over LRA at the time that Respondent left Israel with the child in July 2023. (Pet'r's Renewed Mot. at 11–14). Specifically, Petitioner contends that he "ha[d] rights of custody and parental authority over [LRA] as her father since her birth regardless of her registration with the Israeli Ministry of Interiors." (*Id.* at 11.) As support for this contention, Petitioner directs the Court to the Israeli Legal Competency and Guardianship Law, 5722-1962, verses 14-15. (Pet'r's Renewed Mot. at 11; Ex. Q to Pet'r's Renewed Mot., ECF No. 24-1.) Pursuant to the Israeli Legal Competency and Guardianship Law, 5722-1962, verses 14-15, "[p]arents are the natural guardians of their minor children . . . [and have] the duty and the right to . . . determine their [children's] place of residence." (Ex. Q to Pet'r's Renewed Mot. (citing Legal Capacity and Guardianship Law, 5722–1962, 16 LSI 105 (1962) (Isr.) §§ 14–15).) That is, parents are the guardians of their children by virtue of their birth alone, even without having established legal parentage. (*Id.*) And, consequent to parental guardianship, parents possess custodial rights as to their children, including, *inter alia*, the right to determine the residency of their children under Israeli law. (*Id.*) In the instant matter, Petitioner is the undisputed, natural father of LRA. (Verified Pet. ¶¶ 5–6.) That Petitioner was not legally registered as LRA's father with the Israeli Ministry of Interior until after LRA was removed from Israel is of no consequence. Indeed, as LRA's natural father, Petitioner possessed custody rights over LRA under Israeli law, including the right to determine LRA's residency, at the time of her birth and removal. Accordingly, the Court is now convinced that Petitioner pleads sufficient facts to demonstrate that he possessed custody rights over LRA at the time of her removal and, thus, can succeed on his ICARA claim.

11

## CONCLUSION

For the foregoing reasons, Petitioner's motion for default judgment is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
October 22, 2025  L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge